Mishkin *v.* Temple Beth El of Lancaster,
Appellant.

Argued November 21, 1967. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROB-
ERTS, JJ.

reargument refused April 15, 1968.

*John W. Beyer,* with him *Louis Weisman,* and *Arnold, Bricker, Beyer & Barnes,* for appellant.

*Robert Ruppin,* with him *Charles A. Achey, Jr.,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 15, 1968:

This appeal is from a final decree entered in the court below enjoining the defendant from continuing the construction of a fire tower on its property in the city of Lancaster, allegedly in violation of a building restriction included in a deed and agreement in the defendant's chain of title, and ordering the defendant to remove that portion of the fire tower already constructed.

The building restriction which the fire tower is claimed to violate was created in a transaction between the prior owners of plaintiff's and defendant's abutting properties. In 1904 the south wall of the building located on the land now owned by the plaintiff was 4 1/2 inches from the north boundary of the land now owned by the defendant but the foundation of the building extended onto this 4 1/2 inch strip. On September 1, 1904, the owners of plaintiff's land by quit-claim deed, recorded on April 14, 1905, conveyed to the owner of defendant's land the title to this 4 1/2 inch strip. The deed specifically gave defendant's predecessor in title, his heirs and assigns, the *right to build on this strip* up to and against the south wall of the building on

the grantor's land, but reserved to the grantor, his heirs and assigns, the right to maintain the foundation wall thereon. The deed in pertinent part further provides: "but nothing in this grant shall be construed so as to permit . . . [defendant's predecessor] his heirs and assigns, to close up the two (2) windows one on the second and one on the third floor now located and fixed near the front or western part or portion of said wall which said two (2) windows are at all times hereafter to be allowed to remain open in accordance with a certain writing executed or about to be executed. . . ."

The referenced writing was executed by the owners of both properties on September 16, 1904, and was recorded on January 20, 1905. It provides in part that "at no time hereafter shall any building be erected . . . [on defendant's lot] nearer to the present city house line . . . than twenty feet nor shall any porch be erected on said lot the front line of which shall be nearer to said City house line on Lime Street than ten feet nor shall the North line of any such front porch be nearer to the South line of the said property . . . than eight feet." The writing also contains the following recital: "AND WHEREAS, there are now located and fixed near the front or western part or portion of the South brick wall of the dwelling house No. 31 North Lime Street two windows, one on the second and one on the third floor about eight or nine feet East of the front line of said dwelling which are at all times hereafter to be allowed to remain open. . . ." The writing then provides that the owners of plaintiff's property shall have "the right, liberty and privilege of maintaining *said* two windows . . . *as the same are now located and fixed,* free and clear of any obstructions except a dwelling house and front porch erected in accordance with the above reservations as to their front lines." (Emphasis added.) Finally the agreement provides, in pertinent part: "nothing herein shall be construed to prohibit

[defendant's predecessor in title] his heirs and assigns from constructing on his said property any uncovered front porch extending Northward to the South wall of the property, No. 31 North Lime Street, the intention being hereby to permit the maintenance of said two windows unobstructed except as to any covered porch which may be erected" in accordance with the above restrictions.

The lower court concluded that the deed and written agreement create a setback restriction on defendant's land and ruled that the construction of the fire tower involved is "in plain disregard of the restriction expressly stated in clear and unambiguous language in the defendant's chain of title." With this conclusion and ruling we disagree.

While it is true that the written agreement involved does in one instance unambiguously state that no building shall be erected within 20 feet of the house line on plaintiff's property, this provision is in direct conflict with the express provision in the deed which permits such construction up to and against the south wall of the building on the plaintiff's property. Moreover, the provisions in both the deed and agreement proscribing the obstruction of the windows described therein cast serious doubt upon the position that the parties intended to create a setback restriction. If this were their intent, why the need for a provision relating to the obstruction of the windows? A setback restriction without more would prohibit any such obstruction.

It is fundamental that the intent of the parties governs and that such intent must be ascertained from the entire instrument, *Mather Estate*, 410 Pa. 361, 189 A. 2d 586 (1963). After a reading and re-reading of the deed and writing in their entirety, we are at least uncertain as to whether the parties intended to create a setback restriction or a mere easement for light and

air by prohibiting the obstruction of the two windows described in the controlling instruments. The latter interpretation is at least as reasonable as the former. It is supported by particular reference to the porch exceptions, from which it appears that the building restrictions are only a means of implementing the agreement's express intent to keep the windows referred to in the instruments unobstructed. Thus a covered porch may not be constructed within 8 feet of the south wall of the building on plaintiff's property, but an uncovered porch may be constructed right up to and against this wall. From the difference it is reasonable to infer that the purpose of the building restrictions was to preserve the view from the windows. Since a doubt exists as to what was intended, it must be resolved against the conclusion that the agreement was intended to create a setback restriction. See *Great A. & P. Tea Co. v. Bailey*, 421 Pa. 540, 220 A. 2d 1 (1966); *Food Fair Stores, Inc. v. Kline*, 396 Pa. 397, 152 A. 2d 661 (1959); *Jones v. Park Lane For Convalescents*, 384 Pa. 268, 120 A. 2d 535 (1956).

In *Jones v. Park Lane For Convalescents*, supra, this Court reiterated the legal principles applicable to a case of this nature which were established by a multitude of prior decisions cited therein. In *Jones*, 384 Pa. at 272, 120 A. 2d at 537, we stated that: ". . . restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner."

Plaintiff argues that by the 1904 agreement the parties thereto intended to permit construction on defendant's land right up to the building line on the rear thereof, but to restrict such construction on the front 20 feet of the land. This may have been their intention, but such certainly is not clear and "every doubt and ambiguity" in the language must be resolved against the asserted restriction.

The plaintiff also argues that since the agreement could have said that its *only* purpose is to permit unobstructed maintenance of the windows involved, but does not, it should be construed to mean that the parties intended other purposes, including the imposition of a general setback restriction. This argument ignores the long established legal principles referred to before that a restrictive covenant is strictly construed and that nothing will be deemed to be in violation thereof which is not in plain disregard of its express terms. The agreement, as noted before, expressly states that its purpose is to permit unobstructed maintenance of the two described windows and where strict construction applies the maxim *expressio unius est exclusio alterius* is particularly appropriate.

Since the deed and agreement involved do not clearly express an intention to create the asserted setback restriction, the doubt must be resolved against such a restriction. Thus construed, the 1904 agreement intends only an easement for light and air for the benefit of the windows described in the deed and agreement.

Since the court below did not specifically determine whether or not the construction of the fire tower violates the easement for light and air, the record will be remanded for this purpose.

In this connection, we have considered the defendant's petition for a further hearing, filed some time

after the original hearing, but one day before the final decree was entered. It was alleged therein that after-discovered evidence would establish that the two windows described in the agreement involved had been bricked up and that the two windows upon which attention was focused during the trial were not the windows intended to be benefited by the restriction. A further hearing was denied by the court below on the ground that such evidence is immaterial and could have been discovered with reasonable diligence prior to trial.

A petition for rehearing, like a motion for a new trial, is addressed to the sound discretion of the trial court. *Fell v. Pitts.*, 263 Pa. 314, 321, 106 A. 574, 576 (1919); *Brener v. Philadelphia*, 305 Pa. 182, 187-188, 157 A. 466, 468 (1931); *Thomas v. Waters*, 350 Pa. 214, 38 A. 2d 237 (1944). In this case, however, the trial court's exercise of discretion was based on a mistake of law. The court below erred in viewing the after-discovered evidence as immaterial. Given the fact that the 1904 agreement as construed above creates only an easement for light and air, that easement may have been abandoned if the dominant tenant did indeed brick up the windows covered by the restriction, making enjoyment of the easement impossible and thereby indicating an intention to abandon it. *Hatcher v. Chesner*, 422 Pa. 138, 221 A. 2d 305 (1966); *Eagan v. Nagle*, 378 Pa. 206, 106 A. 2d 222 (1954); *Landell v. Hamilton*, 177 Pa. 23, 35 A. 242 (1896); American Law of Property §§8.96, 8.97 (1952); Restatement, Property §504 (1944).

The plaintiff submits that there could have been no abandonment because new windows were opened even if the original ones were bricked up. The 1904 agreement, however, is only for the benefit of the windows "as the same are now located and fixed." If the de-

fendant's allegations are proved, the new windows are differently located and the restriction does not apply.

The absence in defendant's petition of an allegation or proof that the after-discovered evidence could not have been discovered in the exercise of reasonable diligence ought not to be fatal under the circumstances of this case. Defendant's and plaintiff's assumption during the trial that the two windows presently existing are the same ones referred to in the 1904 agreement is understandable. We see no fault in defendant's failure to discover the window change earlier. Moreover, proof of defendant's allegation that the windows protected by the 1904 agreement were bricked up will be relatively simple and should impose no great hardship on the plaintiff. Courts exist to do justice and we believe that, on balance, the regrettable burden of a new hearing is justifiable under the circumstances presented and where the after-discovered evidence will be determinative of the issue dividing the parties.

Decree vacated and record remanded for the purpose of further proceedings consonant with this opinion.

Each party to pay own costs.